Tania L. Whiteleather SBN 141227
Law Offices of Tania L. Whiteleather, Inc.
5445 E. Del Amo Blvd., Suite 207
Lakewood, CA 90712
tel (562) 866-8755  fax (562) 866-6875
tlwhiteleather@gmail.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.M., a minor by and through her Guardian Ad Litem, TAMMY METZGER,<br><br>         Plaintiff,<br><br>    v.<br><br>LOS ALAMITOS UNIFIED SCHOOL DISTRICT, A Local Educational Agency,<br><br>         Defendant. | CASE NO.<br><br>COMPLAINT FOR REVERSAL OF OAH ADMINISTRATIVE RULING DISMISSING WITH COMPLAINT WITH PREJUDICE AND FOR ORDER REMANDING MATTER TO OAH |

    Plaintiff M.M. alleges as follows:

**JURISDICTION AND VENUE**

    1.   This court has original jurisdiction of this action under 28 U.S.C. § 1331 because it arises under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. 1400, et seq..  This action seeks reversal of an OAH Ruling (improperly labeled a "decision") and remand of the amended hearing complaint to OAH for hearing and determination.  This action for reversal of the OAH Decision is filed pursuant to Calif. Educ. Code §

1

56505(k), which requires the filing of any appeal or complaint for reversal of an OAH Decision to be filed within ninety (90) days of Plaintiff's receipt of the Decision.  The "Decision" was received by Plaintiff on October 20, 2017, and a copy of that document is attached hereto as Exhibit A.  This complaint is timely filed.

2. Jurisdiction is conferred by 20 U.S.C. 1415, 28 U.S.C. 1331, 1343(a)(3), 1343(a)(4), and 1367(a).

3. Venue is proper in the Central District of California under 28 U.S.C. 1391(b) because Plaintiffs and Defendants are located in Orange County which is located within the geographic boundaries of the United States District Court for the Central District of California.

4. Plaintiff has exhausted her administrative remedies, as M.M. and her parent have pursued such through a California due process administrative hearing, Case No. 2017050096.

**THE PARTIES**

5. M.M. is a thirteen-year old student who at all times relevant to this complaint was enrolled in the Los Alamitos Unified School District ("District").  M.M. is a student with a disability - autism - and is in need of special education and related services to address her unique educational needs.  She has previously been identified by the District as a student eligible for special education and an IEP pursuant to IDEA and State law.

6. M.M.'s parent and guardian ad litem, Tammy Metzger, shares joint physical and legal custody of M.M. with her ex-husband, Raph Metzger. Mr. Metzger has, through a written mediation agreement, agreed that Tammy Metzger may seek an IEP for M.M. and that he, Mr. Metzger, would not interfere.

**COMPLAINT**

7. The Individuals with Disabilities Education Act ("IDEA") is a statutory mandate which confers on all students with disabilities the right to a free and appropriate public education. IDEA's "comprehensive educational scheme" has been designed to meet the unique educational needs of students with disabilities and to prepare them for further education, employment, and independent living. 20 U.S.C. § 1400(d)(1)(A)

8. As part of the provision of FAPE, a local educational agency ("LEA") must assess a student, determine eligibility under IDEA, and determine the student's needs and necessary services, as mandated by 20 U.S.C. § 1414.

9. When M.M. was seven years old and in second grade, an assessment for special education and related services was conducted by Dr. B.J. Freeman. That report was presented to the IEP team on June 11, 2012. Based on that report, M.M. was found eligible for special education with eligibility under autistic-like behaviors as well as speech and language impairment. An IEP - Individualized Education Plan - was developed by the IEP

team and parents. M.M. received an IEP and special education services from the District.

10. On May 29, 2015, M.M.'s father submitted a letter to the District, without the mother's agreement, revoking his consent to M.M.'s consented-to and implemented IEP. On June 2, 2015, District provided both parents with Prior Written Notice that it had accepted the father's unilateral revocation.  The District then terminated M.M.'s IEP and special education services, providing her with a 504 plan, one that could not and did not provide M.M. with services to meet her unique educational needs.

11.  On October 20, 2015, during a Family Law mediation, M.M.'s parents signed an agreement regarding educational rights over M.M.   That agreement stated that:

> Tammy may apply to Los Alamitos Unified School District for an IEP or 504 for [M.M.] and Raph shall not interfere nor object to same.

That agreement was prepared and agreed to with the assistance of not one but two attorneys representing the father.  Quite amazingly, after father negotiated the agreement with assistance from his two counsel, he claimed that he signed that agreement under duress.  The father has sought to void that agreement through the Courts; to date he has been unsuccessful, although the issue is on appeal to the California Court of Appeal.

12.  In December 2016, M.M.'s mother engaged Ann Simun, Psy.D. a clinical neuropsychologist, to assess M.M.. Her report, dated January 25, 2017, noted concerns:

a history of Autism Spectrum Disorder, continuing areas of struggle with higher order language delays including social communication and pragmatics, theory of mind, repetitive behaviors and self-stimulators behaviors. Dr. Simun's report further noted that M.M. had benefitted from special education and related services in the past but now exhibits regression in those areas since being exited from special education in 2015.

13. Dr. Simun also noted that M.M. was exhibiting regression in several areas of need since being exited from special education in 2015. Dr. Simun recommended comprehensive evaluations in Speech/Language, Occupational Therapy, Assistive Technology and services in pragmatic language, fine motor skills, organization, social skills and other services for M.M. Dr. Simun reported that M.M.'s pragmatic language skills had dropped to the point that there is now a 35-point gap between her pragmatic skills and the level at which she should be. At the April 2017 meeting, M.M.'s teachers stated that M.M. was reluctant to read fiction, i.e., novels, supporting a suspected issue with reading. The recommendations by Dr. Simun were all but ignored by the District, and no IEP team meeting was ever held.

14. On April 7, 2017, M.M.'s mother made a written request to the District for a reinstatement of M.M.'s IEP. In response, the District wrote to the mother that:

> Father's revocation can be accomplished unilaterally, and the District is prohibited

        from providing any special education services to [M.M.] following his revocation. Accordingly, the District declines your request to "reinstate" [M.M.'s] previous IEP, or her status as a special education student. [M.M.] cannot be made eligible for special education again without the recommendation of a full IEP team, as well as consent from **both** (emphasis added) parents.

15. On April 28, 2017, M.M.'s mother filed a due process complaint with the California Office of Administrative Hearings ("OAH"). That complaint was brought under the 20 U.S.C. § 1400 et seq, the Individuals with Disabilities Education Act, known as IDEA.

16. Prior to the hearing, at a pre-hearing conference held on August 8, 2017, the OAH administrative law judge ("ALJ") questioned her authority to hear the issues raised by Plaintiff and ordered the parties to brief the issue. The ALJ ordered the parties to file a brief regarding OAH's jurisdiction over the issues in Plaintiff's due process complaint. The parties were ordered to submit their briefs by September 26, 2017.

17. During the pre-hearing conference, which was recorded, Plaintiff's counsel indicated that, as was her client's right, she intended to amend the due process complaint. District's counsel asked that Plaintiff not amend the complaint until after any OAH ruling on the

briefing, and Plaintiff's counsel agreed but obtained the ALJ's agreement that any amendment would be filed after the ALJ's ruling.

18. On the date the briefs were to be submitted, Plaintiff's counsel moved for a one-day extension of time for the filing and submission of her brief. Such a motion has been entertained and timely granted by OAH and its ALJs for many attorneys in many complaints over OAH's twelve years of conducting IDEA hearings. Unfortunately, OAH did not respond to Plaintiff's motion and Plaintiff was not given the one-day extension she had requested to file her brief.

19. No administrative hearing was held on any issue raised by Plaintiff. Instead, the ALJ read the briefs filed by the District and issued a ruling - which she mis-labeled a "Decision." The ALJ wrote the ruling as if there had been a hearing and failed to address Plaintiff's request, and the ALJ's and District's agreement, that an amendment of the complaint could be filed after the ALJ's ruling on the jurisdiction issue.

20. The ALJ's ruling stated that OAH had no jurisdiction over the issue raised in Plaintiff's original complaint. The ALJ's ruling failed to address the parties' and ALJ's agreement and ALJ's affirmation that Plaintiff could amend her complaint after the ALJ's ruling was issued.

21. Plaintiff's counsel made a motion for reconsideration, raising the issue of Plaintiff's right and prior

request to amend the due process complaint. Motions for reconsideration are permitted by State law to request reconsideration of OAH rulings. Govt. Code § 11521, C.C.P. § 1008. Instead of addressing that motion, OAH ruled that the October 20, 2017 ruling was a "decision," for which OAH and State law recognize no reconsideration.

**FIRST CAUSE OF ACTION**

<u>For Reversal of OAH's Decision Dismissing Plaintiff's Complaint Without Allowing Plaintiff to Amend</u>.

22. Plaintiff incorporates by reference each and every allegation of Paragraphs 1 through 21 of the Complaint as though fully set forth herein.

23. Plaintiff had a clear right to timely amend her due process complaint. When Plaintiff's counsel raised amendment at the pre-hearing conference, the District and the ALJ indicated that any amendment of Plaintiff's complaint would be reserved until after the ALJ had ruled on the issue of jurisdiction. Accordingly, Plaintiff did not file an amendment of her original due process hearing complaint.

24. Without a hearing, the OAH ALJ issued a ruling on the issue of jurisdiction; the ruling dismissed Plaintiff's complaint without allowing leave to amend. That ruling was not a due process decision and could and should have been reconsidered upon the filing by Plaintiff of a motion to reconsider.

25. OAH's complete dismissal of the due process complaint filed by Plaintiff should have permitted

Plaintiff the right to amend her original due process complaint - as the parties and ALJ had agreed at the pre-hearing conference in August 2017. Instead, OAH simply refused to address the motion and failed to allow Plaintiff to amend her complaint.

26. Plaintiff's amended complaint, provided to OAH with the motion for reconsideration, included an issue as to whether the District had ignored the parent's mother's April 2017 request for an IEP and special education services. Plaintiff contends and alleges that, as a direct result of the agreement between the parents, Plaintiff's mother was entitled to request an IEP and special education services from the District and to obtain those, without interference from Plaintiff's father.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests relief as follows:

1. The OAH Ruling issued on October 20, 2017 be reversed and Plaintiff be permitted to file an amended complaint in that matter;
2. M.M.'s mother be allowed to pursue an IEP and special education services for M.M. without objection or interference from M.M.'s father;
3. Plaintiff be awarded reasonable attorneys' fees and costs incurred in the pursuit of this IDEA complaint for reversal;

9

4. Such additional relief be awarded as the Court determines to be appropriate.

Dated: January 16, 2018

By: /s/ *Tania L. Whiteleather*
TANIA L. WHITELEATHER
Attorney for Plaintiff

10